Thank you. May it please the court, as I noted, Henry David appearing for appellant Franklin R. Fraley doing business as Fraley & Associates. I would like to reserve five minutes for rebuttal. I have to say my experiences, my preferences in that regard don't always pan out. I would like to first answer the court's, the second question in the court's September 30th email because I context for the answer to the first question. Regarding the sufficiency of the mechanisms for establishing a reserve, the court's second question, the mechanisms that these insurers use to set aside 20% of the settlement proceeds to secure Fraley's lien pending resolution of the fee dispute between Fraley and his former client Kessler were insufficient as a matter of law. California case law definitively holds without exception that an insurer cannot avoid the duty to honor an attorney's lien by transferring the proceeds to someone else such as successor counsel. The only... I thought there were, let me stop you there Mr. David. I thought there were a number of cases that said holding the money in counsel's trust account pending the resolution of the lien is sufficient. Now I understand giving the money to the counsel for its own fees isn't sufficient, but do you dispute that if they, let's put aside the amount of the lien for a second, if the insurer had simply said to successor counsel you must hold the appropriate amount in your trust account pending resolution of the lien dispute, pending resolution of the fee dispute and they had held the appropriate amount, we'll get back to them out later, that that would be a violation of the lien statute? Absolutely, well it's not a statute, but absolutely your honor, but both the Levin court and the Perlmutter case involved exactly that situation. In Levin, the former counsel had a 40% contingency. He negotiated a settlement for $40,000, his client fired him, the successor counsel settled the case and held exactly 40% of $40,000, $16,000. Levin court said no, that's not good enough and said the insurers were liable even though they gave the money to successor counsel and successor counsel held that money. Perlmutter... But in Perlmutter, successor counsel didn't give the money to the lienor, correct? In other words, that was a case where successor counsel didn't pay over the money to the attorney who had the lien and I understand why the insurer might be liable under those circumstances. My question is, assuming that they paid you the right amount of money out of their trust accounts, you don't have a claim against, that would be appropriate, wouldn't it? Well, right amount, if we were paid in full, that is correct, there'd be no claim. Okay, so that's why I think the second question is really not the determinative one, it's the first question, which is how much you were owed. We know you got paid, we know how much you got paid. If it was less than you should have been paid, then the insurers I think are liable for the difference. But if you got paid what you should have been paid, then the mechanisms in this case make no difference because you got it. Am I missing something? Well, at some level, that's true. If we're paid in full, we have no damages, we have no claim against anybody. But Levin was very, very clear that the problem is not whether we get paid or not. The mere transfer to successor counsel gave rise to liability, period. Levin was absolutely clear about that. But that was an unrestricted transfer to successor counsel. So here, rather than keep the money themselves, they gave it to successor counsel and made them promise to keep it in their trust accounts. And apparently they did. I mean, there's no dispute that they were kept in the trust accounts. The question is how much was kept, right? Well, that's exactly it. 6.46 was transferred, that act in and of itself created liability, and only 1.3 was held. Well, no, 1.8 was held. Out of the 6.46, only 1.3 was held. Mr. Fraley succeeded in tying up another, actually $800,000 in a different case. But in terms of these- Can I ask you about that? Because I don't find that in the record. Did Mr. Fraley tie up $800,000 in the other case, or did DK have a judgment lien? I don't see an attorney's lien in the other case. All I see is a judgment lien on behalf of DK. Am I wrong? You're wrong in the sense that there was both a judgment lien in favor of Kessler and then Fraley's in essence on that lien. So both were filed. Tell me where I can find an attorney's lien against the recovery in the malpractice case. Since that was not a recovery Mr. Fraley produced, I don't see how he could file an attorney's lien against it. Actually, he did provide services in connection with the malpractice action. More importantly, as the arbitrator found and as the state court confirmed, his lien specifically covered any proceeds from the malpractice action. Mr. Fraley took actions to enforce the underlying judgment against the malpractice claim. But that's different than having a lien against it, isn't it? Well, yes and no. He performed the services and the fees for the services were subject to the lien and the arbitrator and the state court specifically so found. Is that right? I'm looking at the arbitrator's award and maybe I'm missing something. Tell me where the arbitrator found that the lien extended to the proceeds in the malpractice action. Excuse me, your honor. I am sorry that I do not have the final arbitration award in front of me so I'm going to have to look that up. You can look at it later. The reason I'm asking this is it seems to me the essential question is what's the amount of the lien? At the end of the day, forget mechanisms and transfers and everything else. The question is what's the amount of the lien that the insurers were obligated to discharge? And so that's what I'm trying to figure out. Let me sort of work through easy stuff and then ask you the hard question. I think we all agree that the value of the services provided prior to discharge was 1.8 million, give or take. That's what the arbitrator found. That's what your client claimed. The other side doesn't dispute that. It's closer to 1.9, but yes. Okay, that's why I said give or take. 1.9, let's use 1.9. And then we all agree that the arbitrator issued an award for an amount significantly larger than that. And that along the way, your client got paid roughly 2.1 or 2.2, correct? He got a 1.3 at the time of the interim award, correct? Yes. Yes. And then he got about 800,000 right after the final award, right? No, after entry of the judgment. After the entry of judgment, sorry. Okay, so when I added those two numbers together, they're 2.1 or 2.2, correct? Correct. Okay, good. So we don't disagree about any of that stuff. Now, here's the legal questions, and this is why this case is hard. If the insurers had simply paid your client 1.8 or interpleaded 1.8, 1.9 in your view, on the day that the coverage case settled, would they have discharged their obligation to your client? Absolutely not. As indicated in the spreadsheet that is supposedly the basis for their of the record, Mr. Fraley in September of 2015 was claiming 3.26 million because of interest. And there's no doubt in anybody's mind that interest- But I thought you waived all interest claims until the time that the award was entered. Am I mistaken about that? Until the time of the coverage suit settlement. That's in the record. What's in the record is that during the arbitration, subsequently, Mr. Fraley agreed to waive that amount of interest, but that was not known in February 2015. Okay, but you now don't have a claim for that amount of interest. You've waived it. I'm not arguing. I'm trying to figure out something here. So it turns out that all your claiming was owed on the day of the coverage agreement was 1.8 million. It may not be sufficient for them to put that away, but what more should they have put away on that date? Well, first of all, and this is why the second question I think is important. The insurers are not supposed to determine this amount at all. The interpleader court, there should be an interpleader court and the interpleader court should determine the amount. If you're asking me to sit as the interpleader court and in February 2015 decide how much to set aside when Mr. Fraley's claiming 3.26 million, additional interest will accrue. Attorney's fees in the fee dispute will accrue. The answer is not going to be $1.8 million. At that point, that's what leads to my next question. Why are the attorney's fees in the fee dispute covered by the lien, which seems to extend only to amounts produced by Mr. Fraley's efforts for his clients? Well, that's confusing the debt with the collateral. The debt that is secured by the collateral, which are the proceeds, is principal interest and attorney's fees. Again, the arbitrator specifically found that. The state court specifically found that. And respectfully, I believe the collateral court, it directly leads to that result in which it says if there's a contractual right in addition to principal, whether interest, attorney's fees, whatever, that's an indivisible debt. And so that debt is secured. You can't start picking apart, well, this invoice is covered, that invoice is not covered, interest is covered, interest is not covered attorney. There is one debt and it is secured. So what amount should the, I guess I'm asking the interpleader question, in your view, what amount should the insurers have interpleaded on the date of the coverage settlement? I'm going to answer that a little differently. They should have interplead the entire thing and let the... Well, that can't be true. That can't be true. Even by your client's you only had a claim for three-fifths of it. So what numbers should they have... If you say 3 million, I'd understand, but you can't say twice the amount he was seeking. Well, given that interest would continue to accrue and attorney's fees would accrue, the answer is not 3.26 million. But more importantly, my point is the insurer shouldn't be making that decision. The interpleader court should. They should get, the interpleader court gets the money and it decides how much to release and how much to keep as security for Mr. Fraley's claim. Now, if you're going to ask me the amount that the, in my view, the interpleader court should hold, or you could say if the insurer, if you conclude the insurers are to sit in the wear of the robes of the interpleader court, then they should interplead. The principal amount... Okay, this has been very helpful. Thank you. I had one other question and then I'll... Judge Kleinfeld has a question. I was going to give you a number. Okay. You're essentially saying that the insurers are bound by the arbitrator's award. Right. That strikes me as a collateral estoppel argument of sorts. Right. Did the district court ever address that argument? No. No. Should we remand to the district court to address that argument in the first instance? Not in the first instance because whether or not they were bound by it, they did not have the right to determine the amount and whether or not it is secure. But more importantly, it seems absurd to me, respectfully, that for the case law to be absolutely uniform, that we had to, Mr. Fraley had to sue Ms. Kessler and get a judgment to determine the amount of his claim and the validity of the claim before he could sue the insurers, but then turn around and say, oh, but that lawsuit means nothing because you have to do it all again. That seems like a rather odd result. I mean, if we need to try it all again, I guess we will, but that seems strange. I've never seen... I'm sorry. Go ahead. Yeah, I do have a question. If I understand your position correctly, the insurance company, if it wanted to escape further liability, needed to interplead the entire amount of the settlement and then, as usually happens in an interpleader actually, let the parties with an interest battle it out before the superior court judge in the interpleader action who got how much out of the settlement. Is that the right way to do it? Okay, now let me get to my next question. Oh, incidentally, you were correct on the arbitrator's award. It says that the lien applies to the malpractice action at paragraph 14. So that's evident. I believe it also specifically says that the attorney sees Mr. Kessler, excuse me, Mr. Fraley and Kurz versus Ms. Kessler are secured by those and now it looks to me as though the way this got from 1.8 million to a whole lot more was the 18% interest rate and I can't remember for sure was that provided for in the attorneys in the original attorneys fees agreement or was it California law or what? Oh, no, no, no. It was the legal courts law. If that was, if there was any problem with that, it was resolved in the arbitration. And if I understand the heart of this case is that the amount that the attorney got was way less than what he was entitled to because prejudgment interest ran for such a long time on so much money. Is that the heart of it? Correct. Plus the fact that there were substantial attorneys fees incurred in the arbitration. Actually getting the money. Sure. Now, if even if the insurance company was wrong to only put the 1.3 or 1.8 or whichever it was into the attorney's trust account instead of interpleading the entire judgment, if Fraley had gotten all the money he was entitled to, it wouldn't matter because there'd be no damages, right? Absolutely correct. Okay. So what we're talking about is the damages because at the amount that Fraley was entitled to was a whole lot more than was put into the trust account and it wasn't adequate to put it into the trust account. Do I understand to secure his lien to buy, to put it into the trust account? Do I understand the case right now? Yes, your honor. Thanks. I have a quick question also. I'm sorry. Under California law, when does the lien stop accruing? Does it just keep on growing until the final arbitration? I'm just thinking like when you think of a real estate lien, you put a, you lodge it and it's usually an amount set, but attorney's lien seems to keep on growing. I'm not sure which real, the answer is yes. Interest continued accruing, the arbitrator so and that is my understanding of California law. And then does it ever stop accruing only the judgment? Well, if the judgment expires due to a statute of limitations, I guess it would stop. Otherwise only when it is satisfied and full. Okay. The judgment today itself continues to accrue interest, albeit at 10% because it's post-judgment. And mine, and with credits for whatever has been paid. Oh, of course, of course. Well, but the $2.3 million that Mr. Frehley was owed as of the summary judgment took into account the full 2.1 million that you're, your honor referenced. Do I have this right? It was, do I have this right? It was 18% as provided for in the attorney services contract pre-judgment and then 10% the state rate post-judgment. Correct. Thanks. We'll give you, we'll give you a little bit of time for rebuttal. Mr. David, we, we took you over time with our questions, but your answers are very helpful. Thank you. Mr. Agnes. Yes. Thank you, your honor. I'll kind of jump around as, as you were asking Mr. David questions and try to answer a little bit on each one and discuss. If I, if I could, since you didn't, since you wanted to do that, let me pose to you what I think is, Judge Kleinfeld phrased it very well at the end. So let me try to rephrase this question and see how you answer it. The arbitrator found that the amount of the, the amount subject to the lien included a whole bunch of things, pre-judgment interest, attorney's fees, et cetera. And the state court affirmed that award. And so why doesn't that establish the amount of the lien? And if it does, you've only paid off, even if we give you credit for both payments, $2.2 million of a lien that at the time that is still has several million dollars remaining in it. Why doesn't that just end the analysis in this case? Maybe Judge Kleinfeld could phrase it for me for your side. Thank you, your honor. The lien, the attorney fee lien in this case was on the outstanding attorney's fees, right? There was approximately 1.8 million. We all agree. Mr. David said he, he agrees on that. That's the, was the amount of the lien at the point in time when let's say the covered suit began because they later waived the interest. But the arbitrator found that by the time we got finished, the amount of the lien was significantly larger. And the arbitrator may have been wrong, but the state court confirmed that award. So why isn't that binding on you? Because the arbitrator found that the reasonable value of the professional services was 1.86. And that is actually the amount of the lien. The other what it matters that he found that the value of the professional services was 1.8. All debts accrue interest until they're paid. It wasn't paid. It was accruing interest. I don't see what's complicated about that. Because all am I missing here? Because all the issues that postdated the payments by the carriers were attorney's fees and arbitration costs incurred to prove that amount, not the attorney's fee lien, but it was something that was in part their retainer agreement, that if we have a prevailing party provision in the attorney fee agreement, that's different than the attorney lien that was created. The attorney lien that was created was only as to what value the professional service. Ordinarily, the insurance company where it has conflicting claims to the money just dumps all the money into an interpleader. I guess those of us who've represented insurance companies have done that more than once. You just and it's the problem of the superior court to decide what to award as attorney's fees to whom after they fight it out. And that whole process was pretermitted here, you might say, because of putting the money into a trust account based on the insurance company's judgment that that would be a sufficient safeguard. It was a sufficient safeguard for the 1.3, but turned out to cover all that interest that was piling up on the debt. Well, and two parts to that, Your Honor. One is if funds were going to be interpled, it would have been the part that was in dispute, which was the 1.8. What Travelers did and Fidelity did and the other parties to that settlement did was provide it to the current council of record, which is absolutely allowed under the law. Appellants mentioned the case of Levin saying that that's an example of where providing it to the current council was inappropriate. But in Levin, it was on a dremur and the court expressly says on page 1285 in footnote five that we couldn't consider what they did because it was outside the scope of the pleading. So they never got to the issue of what was actually done. They only got to the issue of what was pled. But here, what would be interpled at the time of settlement would be 1.8 million. That was the only attorney lien they had and claim they had to proceed. The interest was not an issue. And so what the carriers did was ensure that at least that amount was put in there. It ended up that it was 2.1 was put in there pursuant to the settlement, not 1.8. Mr. Agnes, I want to separate here how a court might have held what the amount of the lien was at the time of the coverage agreement and what the arbitrator held. The arbitrator seems to say the lien covered a much bigger amount. Now, I mean, the arbitrator may be wrong, but that award was then confirmed by the superior court. And so for better or worse, doesn't the arbitrator's award set the amount of the lien, even if the arbitrator was wrong? Can you collaterally attack that finding? Well, first of all, we weren't a party to that finding, Your Honor. So when it came to the whole collateral estoppel issues, we've cited case law. We're not related to DK, who was the plaintiff's former client. They were not representing our interest in the arbitration. But what the arbitrator did was find that the amount of the professional services record was around 1.8. But then we could tack on subsequent interest. No, I understand what the arbitrator did. And you think those amounts are not subject, I'm sorry, you think those amounts are not subject to the lien. And reading California law, I might agree with you. But there is an arbitrator's award and conferred by the superior court that says they are. And does that mean that the district court here just gets to start all over again and figure out the amount of the lien? Or must it accept the state court determination of the amount of the lien? Well, there's another angle to that, Your Honor, which is there's two sets of causes of action pled that are relevant to this case. One is conversion and one of the intentional interference claims. And the intentional interference claims are time barred. And all the cases that are being relied on by the appellants, Levin, Little, and Siciliano are all. Let me get back to the arbitration award for a moment. And you had pointed out that some of the fees claimed are. Can you hear me? Can anyone hear me? I can hear you. I think we can't hear Mr. Agnes. Mr. Agnes, did you mute me? Mr. Agnes, my concern is that you've raised the issue that a substantial amount of the money is attorney's fees that Fraley accrued a right to or if he did accrue a right to secure his award in the court proceeding, in the arbitration and in the subsequent proceedings. And I noticed that paragraph 22 of the arbitration award says claimant is further entitled to recover his attorney's fees, expenses, and costs for any further proceedings to confirm this arbitration award and to enforce any judgment on this final arbitration award or to otherwise enforce his rights and remedies under this award. So it looks to me like that's just collateral estoppel that he's entitled to that money. What am I missing? Those are two different issues, your honor. The attorney fee agreement that Fraley has, and you can see on page 1688 of the excerpt to record, the paragraph on that page describes what the lien entails, what the actual attorney lien that could be established by Fraley is. And the case law says that the time of termination, it's the reasonable value of the services up to that point in time. It sounds to me like you're relitigating what was already decided in the arbitration. The arbitrator may have been mistaken, but it was confirmed and not appealed. It's different, your honor, in a sense that the fees and expenses award is from page 1691 of that attorney fee agreement. It's a prevailing party fee. It's not part of the actual attorney lien, right? So another thing that's interesting about this case that's different than the other distinguished paragraph 22 of the arbitrator's award that was confirmed. That it's dealing with the attorney's fees allowed for Fraley to recover by pursuing what I just read to you. Versus, right, versus what Fraley incurred and had a lien on at the time of the disbursement of money. So one is, they could have settled that day, the day of the coverage settlement, they could have settled their differences. There wouldn't be a further amount owed, right? There's lots of things that could have happened. What happened here is- If the insurance company had given Fraley his 1.8 on the day that the arbitrator said he's entitled to 1.8, yeah, it'd be all over, no damages. Well, but no, that's not true because Fraley disputed the lien. Fraley disputed that anything was owed. I'm sorry, not Fraley, DK did. That's the whole crux of this, your honor, is that an interpleader would be like, you take the 1.8 that's in dispute and you stick it in the- They lost it. And then the interpleaded money went. And so- But they disputed it and then the arbitration award got confirmed in the superior court, so it's a state superior court judgment. And it doesn't matter that they disputed it or not, as far as I can tell. Why should it matter? Because we're talking about the attorney lien aspect of it, not the final total arbitration award, right? The arbitration award- You have a reasonable interpretation of what the lien extended to, and the arbitrator has a reasonable interpretation of what the lien extended to, and it seems like he wins because it's a confirmed award. The California law doesn't allow- So that leads to my question. Why isn't the arbitrator's award determinative here? Is your answer because you weren't a party to that litigation? There's three answers. Tell me why. I mean, after all, you really- You could have just waited until the arbitrator's award and then disperse the money. Instead, you put the 1.8 in in advance, and the arbitrator found that the lien was larger. I'm going to assume for the moment the arbitrator was wrong. I assume the arbitrator misunderstood all of California lien law. But that litigation is over. So the question in my mind is, is that arbitrator's award determinative of your lien obligations, or do you get to relitigate them in the district court? That's really what we end up with. Because I agree with you. At the time of this coverage settlement, the amount of the lien was 1.8 million. There's no argument to the contrary. Because Mr. Fraley later waives any interest, and that's the amount of 1.9. That's the amount he claims, the amount the arbitrator says he's entitled to. But the arbitrator later finds that other sums are subject to the lien. And so the question is, what's the effect of that arbitrator's award? Is it irrelevant? Is it binding? Is it somewhere in between? Tell me what your position is. It's two parts, Your Honor. One is, it doesn't change what the carriers did at the time of the coverage settlement that is at issue in this case. It doesn't change that what was done was sufficient under the law. It would only be sufficient under the law if $1.8 million is the amount of the lien. And so I go back to the question. The arbitrator thinks $1.8 million was not... He wasn't trying whether what you did was sufficient. The arbitrator was just trying to figure out what the amount of the lien was. And so why isn't that binding on us in this case? Because that part should... Nothing above the $1.8 million can, under a California law, be part of the lien that was existing at that time. The other... It's not... The agreement that Fraley has with DK does not even call for that to be part of the lien. The California law does not allow for that to be part of the lien. The only part... It sounds like you're appealing the arbitrator's award to us instead of appealing it in the confirmation case or to the California Court of Appeals. Well, Your Honor, we weren't part of any of that. We weren't given notice of that. We weren't named as a party. We weren't advised of the arbitration proceeding. This all came back to us after the award came in by the arbitrator and was confirmed and the lawsuit began. And so... Well, the arbitration award is a fight between the lawyer and the client. And they're the parties with a direct interest in it. But since your problem is making sure that whatever the client owed the lawyer was secured, I don't see why you have to be a party to it. Because what is being discussed right now, for instance, Your Honor, is the idea that you can now add post-settlement costs and fees encouraged to pursue your perfection of your lien, right? So what we're talking about right now is not the 1.8. We're talking about right now the amount that they spent to try to prove that they were owed 1.8. That's not part of the 12, 13 lawsuits that Fraley spent that was in dispute. That was their own separate prevailing party provision. That's not part of the attorney lien found to exist as of the date of our coverage settlement. But isn't the cost of interest accrued on the attorney's fees in the original action part of the lien? The... well, it was waived. So there's no attorney's... No, that's not... the only pre-settlement interest was waived. Post-settlement, I thought that accrued. And that's what the arbitrator found. That does accrue. And that amount was covered by the... By the lien. Yeah, so my question... So your client's views was that 1.8 was sufficient to cover the lien. But why don't you bear the risk of being wrong on that? And the arbitrator found that you were wrong on that. But the arbitrator found that more was owed because of the cost incurred to prove it. Not because there was more owed at the time of the settlement. Not because there was more owed when they were fired in... Remember, this lien emanates from when Fraley was fired in 2013. Fraley could have filed a lawsuit right then. This is not a contingency fee case. They had a set sum that they were claiming they were owed. They could have filed it that same time period. They didn't file anything. But they had a set sum they were alleging they were owed. And now what the carriers did at the time of the settlement... But can I ask, isn't part of the arbitrator's award the interest owed post-settlement on the original attorney's fees? Yes, interest was included. So the arbitrator found... So you would concede that the lien covered that and that your clients would be responsible for that amount. Well, I think it was covered by the 2.1 million that was provided pursuant to the settlement agreement, too. I don't think it was, Mr. Agnes. That's the question I wanted to ask. The interim award... At the time of the interim award, you paid 1.3. And then after the confirmation, you paid an additional amount. And as your brief points out, that additional amount was sufficient to cover interest since the time of the interim award. But what about interest that accrued between the time of the coverage agreement settlement and the interim award? The arbitrator awarded an amount from that time period until... And that wasn't waived by Mr. Fraley. He only waived pre-settlement interest. So why don't you at least owe, in addition, the interest awarded by the arbitrator from the time of the coverage settlement until the time of the interim award? I think that's the amount that Judge Bumate may have been focusing on. And I think that was, if I'm quickly going to the briefing, I think it was $92,000 and change that was the pre-judgment interest. Unless that... Oh, no, I'm sorry. No, that was on the second payment. I'm talking about the first payment. I need to find the exact number, Your Honor. But under that theory, two things. One is, are we looking at the time the travelers and Fidelity and the defendants settled to see what they did with the money, putting it aside and setting it aside? Or are we looking at the indefinite time period that Fraley can wait to bring a suit that was ripe in 2013? And so, again, this isn't a contingency case where someone is waiting to find out what 40% of a settlement or 40% of a judgment. And you have to find that out and then see what happens. This is an attorney's fees that are ripe in 2013 when Fraley is fired and Fraley says, I've got 13 cases totaling $1.8 million and I have a lien on that and I'm waiving interest. When the settlement comes... Don't you also have to wait till it's paid and until the date of payment to figure out how much has to be paid? Just the way when you pay off a bank on your home mortgage, they calculate how much interest you owe as of the day you pay off your mortgage? They have a right claim from 2013. They could make that argument right then, Judge Kleinfeld. It's not a contingency case where you have to wait for the contingent event to take place. This is an attorney's... Where you have to... Here, the contingent event isn't a contingency fee type event. The contingent event is when, if ever, does his money get paid. And until he gets his money, the interest runs. That's true. Effectively, Fraley could have filed suit right at the beginning or waited. And the longer he waited, the more he could argue that interest is owed. So that's definitely true. But what we're looking at here is... I think he sued a couple of weeks after some critical event. But at the moment, it's escaping me what the critical event was. Well, he initiated the arbitration in April of 2016. And I unfortunately don't have the interest number right here in my time. We've got the data. Yeah, it's well briefed. Yeah, it's well briefed. Do anybody have any questions for Mr. Agnes? Why don't we put two minutes on the clock for Mr. David? Give him some time for rebuttal. Thank you, Your Honor. I'd be happy to answer any questions you have. If not, I would like to follow up on the analogy that Judge Kleinfeld used with the mortgage to show the problem with this idea of... Well, because two years later, Mr. Fraley waived the pre-settlement interest that the insurers can take advantage of that. But they can ignore the fact that there will be interest on attorney's fees accruing between the settlement and payment with Mr. Fraley. That just seems wrong. And I want to use the metaphor or analogy that Judge Kleinfeld used. And let's do a mortgage. Let's assume that we're in LA. So let's assume your mortgage is $1.8 million. And you have a dispute with your bank. And so you say, OK, I'm going to take $1.8 million and I'm going to hold it. And an attorney's client trust account. Now I can sell my house, which is worth $3 million, free and clear. And the bank can only look to the $1.8 million, even though interest will continue to accrue, even though the bank, if it prevails in our dispute, is entitled to attorney's fees. That is ludicrous. The bank's right to principal interest on attorney's fees are all secured by the home. Is that true? Now, again, we know an interpleader wasn't done here. Maybe that's important. But let's assume on the day of the settlement of the coverage case, the insurers said, we have a squabble going on here. The attorney thinks he's owed $1.8 million. My client thinks he's owed nothing or the insured thinks he's owed nothing. So we're going to put $1.8 million into court and let them fight about it. The maximum amount he says he's entitled to today is $1.8. We'll wash our hands and put the $1.8 into court. And he can fight with the client about who gets what. They would know interest thereafter on that, would they? If they had released other money, yes, because the lien secure is not only the principal. No, so you're saying to me, if they put $1.8 million into court on the day of the coverage agreement settlement, they would nonetheless be liable for subsequent interest on that amount? They would be liable to the extent that Mr. Crowley was entitled to interest. Let's start out with this notion that he's not on the day of the coverage agreement, coverage settlement agreement. His entire claim is $1.8 million. And we now know that because you waived interest and the arbitrator found that that was the reasonable value of your settlement. So I'm trying to think about what they should have done here. You come to them and say, I've got a $1.8 million claim. They say, terrific. The insurance says he owes you nothing. Here's $1.8 million court. We're putting it in there. Let these two people fight about it. And you're saying, even if they did that, they would be liable for interest? Yes. In the amount that it took the court to settle that case? Yes, because the amount claimed would be $1.8 million plus interest until paid. It seems to me that by interpleading the amount that you are claiming, because after all, it's not a liquidated sum. It's got to be litigated how much you're owed. The other side disputed how much it was. So you had to have a proceeding to figure out how much you were owed. Wouldn't they have satisfied their obligations at that point? Did they have to interplead an unspecified amount of interest that might be awarded on an amount that was not yet determined? Yes, Your Honor. Okay. Okay. I understand your position. Would I be reading your answer correctly if I understood it to mean if on the day that he was entitled to $1.8, they paid him $1.8, he's done. And he has no further claims. But if instead of paying him, they interplead the $1.8, they're not done because his lien extends beyond $1.8 every day until he gets paid. And paying it into the registry of the court is not the same as paying him. Am I understanding your argument right? That sounds correct, Your Honor. An argument that ends with somebody saying that sounds correct is probably as good as we're going to do today. So I thank both sides for this. I must say this is made more difficult by the uncertainty of California law on some of the issues we were looking at. So we appreciate your help. And this case will be submitted. Thank you, Your Honor.
judges: Kleinfeld, Hurwitz, Bumatay